happy business to attend to and in that connection I understand that Judge Moore has a motion to make yes rather than decide I get to move the admission which means that whether you get in or not or it's in the hands of my colleagues but I'd like to move the admission of Adam Michael Greenfield who is a member of the bar in good standing of the highest court of Illinois and John Frank Murphy who is a member of the bar in good standing of the highest court of Pennsylvania these two gentlemen have clerked for me for the last year with great distinction it's been my privilege and honor to work with them and I'm gonna miss them terribly when they leave I'm Sally that's John's daughter so okay on to the business I have knowledge of their credentials and I'm satisfied that they possess the necessary qualifications so I asked my colleagues to confer and I move their admission well we have held an in-camera camera discussion and I'm honored and delighted to grant the motion in both cases mr. Greenfield mr. Murphy we'll look forward to seeing you in court you've already been of invaluable assistance to us through your work in Judge Moore's chambers and we know that will continue we look forward to having you with us as members of the bar so the motion is granted in both respects and if you'll step forward the clerk of the court mr. Horribly will administer the oath and behalf of the panel welcome to the court welcome to the court all right well we'll now proceed to the cases before us today the panel has five cases before it to them however are being submitted on the briefs without oral argument I will just note those two cases for the record the first one is number 2008-7147 Shackleford versus the Department of Veterans Affairs and the second submitted case is number 2009-3081 Labrador versus the Office of Personnel Management again those cases are being submitted on the briefs the first case in which we will hear argument today is number 2008-5036 harvest Harvest Institute versus the United States mr. Squire morning just want to confirm you you've reserved three minutes for your rebuttal correct that is correct okay step right up to the podium and you can start whenever you're ready and you understand how the lighting system works at all I believe I do okay read the note over there okay well go ahead whenever you're ready good morning please the court your honor I am Percy square I'm here as counsel for appellate in this matter the Harvest Institute Freedmen's Federation black Indians United Defense legal fund and William warrior your honor an issue in this appeal is the question of whether the decision of the federal court of claims dismissing for failure to state a claim and lack of subject matter jurisdiction the complaint of appellants seeking recovery of property or that was not assigned to them on the grounds flowing from treaties entered following the Civil War counsel you said following treaties entered following the Civil War but isn't it true that the complaint or amended complaint didn't allege any specific treaty statute or regulation that is not correct your honor the which regulation or treaty then did you allege a specific breach of your honor we alleged we did not allege a specific breach of the treaty statute or regulation what we alleged your honor is that a entitlement was created under the post-civil war treaties between the five civilized tribes and the punitive class of plaintiffs entitling those individuals to benefits of a trust that was created by the United States under those trees I'm sure you're familiar with the Supreme Court's recent decision in Navajo Nation the one that just came out in April the Supreme Court says as we explain in Navajo one there are two hurdles that must be cleared before tribe can invoke jurisdiction under the substantive source of law that establishes specific fiduciary or other duties and alleged that the government has failed faithfully to perform those duties I'm having trouble finding the substantive source of law because I read this when you read the rest of the opinion as requiring at a minimum the plaintiff to allege the specific statute regulation or other law that creates the trouble with the notion that you could make a generalized statement that just says post-civil war treaties period without identifying the specific ones that create a fiduciary duty that you believe the government is breach your honor the amended complaint identifies five post-civil war treaties between the federal government and the various tribes affected by those treaties those treaties are delineated in the complaint entered in 1866 and in some respects revised or amended up until the turn of the century but the fundamental basis for this claim rest in those 1866 treaties which are specified individually in the complaint the argument here is that under those treaties the United States undertook the responsibility of a trustee in relation to the freedmen affected by the treaties what language in the treaty created the trust your honor the trust is created under authorities articulated by the prior to and subsequent to the treaty. Which specific case are you referring to? The Cherokee Nation versus State of Georgia 30 US 1 and 1830 case United States versus Kagama. Well Justice Marshall I think in Cherokee versus Georgia stated that there were dependent nations and that created the trust responsibility with the land there was a beneficial trust action which was granted because of the land reservation that was established. Isn't that correct? That is correct. Where was that established here? Your honor it was established here because these treaties created a entitlement on behalf of the freedmen appellate's ancestors to either become fully integrated into the tribes that they were held by or to be separated from those tribes and to receive the entitlements created by the treaties. Where neither of those outcomes occurred it is the argument of the appellate's that by reason of the general trust relationship that exists between the United States and the descendants of the ancestors of the appellate's that a trust relationship exists. Isn't that what the Supreme Court recent opinions have indicated that you can't just say it's a general trust relationship? Well it has to be a specific trust relationship? Your honor the recent Navajo opinion requires the articulation of a specific trust relationship. It is the position of a general trust relationship is the United States established a right to property land or entitlements based upon the condition of the appellate's in advance of the treaties being created. There was a specific duty created on the part of the tribes that held these individuals to either give them land or to integrate them into their tribes. In the event that that did not happen the United States had a duty and this is the claim that is being made here. Where that did not happen by virtue of the mandate of those treaties the United States had a duty to assure that the entitlements were accorded to the appellate's here. In this instance nothing occurred in many instances. This is the reason this lawsuit was filed. There was land given, there was no action or a specific decision made by the tribes. The treaties did not establish any land that was given to anyone at that point. Your honor the treaties created in effect in these tribes. There were specific provisions in these treaties conveying land to the tribes that held these slaves. Well the 1866 treaties that not perform any transfer of land to any of the tribes at that point in time was a recognition of the 13th, 14th, and 15th amendments which created essentially an within their tribal structure and subsequent to that if in fact they were so integrated they would then obtain a right to some land if they were integrated. In several of the treaties that was a condition wasn't it? The Choctaws and the Chickasaws. In the Chickasaw treaty that was a rule but the general proposition established by these treaties your honor was that the Indians were no longer allowed to hold slaves. That the slaves could either be integrated into the tribes or if they were not integrated into the tribes there was land allotted to the tribes that should have been given to the ex-slaves. It's our position here that were neither of these outcomes occurred the United States had a duty given the fact that it had created this right to provide land to the Indians lands and the other entitlements to the freedmen. Our argument here your honor is that there was a specific entitlement created under these treaties. That's our number one response to the recent opinion in the Navajo case that in this case there was a specific entitlement created and that in numerous instances notwithstanding the creation of this entitlement the beneficiaries never received anything and that until such time as the United States formally repudiates its duty to in accord to accord these benefits to these individuals a claim under the Tucker Act is not barred because the statute of limitations did not begin to rise. Is that how you get it because the difficulty I was having with the case was seeing how there was an obligation here on the part of the government that was breached because it seemed to me if in fact anything was not done that should have been done it was on the part of the tribe that is that were the several tribes. That is correct your honor it's the tribes who failed to honor the requirements of the treaties but by reason of the trust relationship that exists between the government and the exploited persons the exploited persons stand in the position of beneficiaries of a trust even though it was the tribes who failed to carry out the provisions of the trust it's the beneficiaries who have the claim against the trustee notwithstanding the fact that the third person was the individual who breached the trust the trustee still has a duty to see that the mandate of the trust is carried out in favor of the beneficiaries and it's our position that until such time as the United States affirmatively repudiates that duty the statute of limitations does not run against the beneficiaries. If I promise to give you a hundred dollars and then I don't pay it to you and I don't pay it to you and I don't pay it to you when does the statute of limitations start ticking? At the point when you say I have no intention of giving you your hundred dollars. Isn't isn't it enough that you know I've moved on moved away and you know you don't see any evidence that I'm going to pay you don't you have an obligation at some point to to move forward isn't that why the statute of limitations exists because I mean we're talking about claims here that are more than a hundred years old I don't know that what's the exact age? You probably know. Your honor the United States Supreme Court said in the Taylor case it's only when the trust is repudiated by the trustee entitled to the corpus is claimed adversely to the beneficiary does the lawsuit becomes necessary to establish the entitlement. At that point the statute of limitations begins to run. But counsel if I interpret the law the way you'd like me to then it seems that if I tell you I promise to pay you $100 and I don't pay it to you you could your heirs in form of probably your great great great grandchildren could then sue my great great great grandchildren saying that they didn't pay and every day they didn't pay created a continuing claim and I find that difficult. Well your honor the notion underlying this theory is that you're not dealing here with people who are in equal positions of bargaining power or even of understanding. The notion underlying this trust relationship that exists between these individuals in the United States is that these are exploited and abused individuals. While there may be conduct which in some circumstances could give rise to notice as you've indicated that would trigger the statute of limitations where you are dealing with individuals who have been totally exploited, have no education, have no understanding of the law, did not have counsel, I don't think the same type of analysis would be applicable where you have a different set of circumstances. Okay well do you have any examples of cases that you could cite to me that explain that disadvantaged individuals who are unsophisticated in the law the statute of limitations doesn't apply to them? Well it's not that the statute doesn't apply your honor it's the point at which they're on notice that the trustee has repudiated the obligation to accord benefit to them. When in your mind did they become aware of the fact that the trustee has repudiated the benefit? It's my position your honor that the trustee has not yet repudiated the benefit. And do you have a cause of action if the trustee hasn't repudiated in fact you really don't have standing? We have a cause of action to the extent your honor that in this case the United States has indicated that there's no duty. Moreover we have a cause of action here I'm sorry. So when did the United States indicate there was no duty after you brought the suit? The United States indicated when we brought this lawsuit that there was no obligation to perform under these agreements that everything was res judicata and that the statute of limitations had run a hundred years ago. It was our position when we brought this case that the statute of limitations was preserved on two theories the continuing claims theory and under the repudiation rule. In its all. They are eating up all your rebuttal time I better let you say that's 29 seconds you've got left. Well yes that's that's correct Mr. Squire you are well into your rebuttal but I tell you what we will restore your full rebuttal time. You'll have your full three minutes on rebuttal and we'll hear from the government now. Ms. Peterson. May it please the court I'm Elizabeth Ann I should affirm the dismissal of this case for any one of a number of reasons. First off the Federation has entirely failed to establish standing to sue because it's alleged injury is not traceable to any action or inaction by the United States that's required by the Constitution or federal law in the absence of showing of a violation of a provision of the Constitution or of Miss Pearson your brief a number of arguments standing is one what I'll call the lack of a tucker act claim is another the statute of limitations is another. Is there any kind of jurisprudential order of precedence here? No. In your view is any one of them standing alone dispositive. Your Honor each of them standing alone is dispositive and the court reasonably could simply affirm the lower courts dismissal for violation of statute of limitations. The case clearly is barred by the statute of limitations. You say that the statute of limitations I guess your bottom line position is that the statute of limitations ran at least no later than 1902 somewhere in there when the subsequent treaties were enacted or statutes was it? Agreements your Honor yes the provisions of the treaties that had anything to do with the tribe the five civilized tribes continued right to occupy their lands were substantially modified by agreements that were completed as of 1902 allotting land to all of the members of those tribes including the freedmen members that had been adopted there was at least one there was one of the tribes that did not adopt its freedmen. Those freedmen brought an action that was decided by the United States Supreme Court as early as 1904. Any question whether the statute of limitations has run on claims regarding these lands and the allotment? Is that another issue that you did not raise was restrict cutter the Choctaw Treaty that was decided by the Supreme Court? Was that restrict a cutter on the Choctaws? It is restrict a cutter on the Choctaws. We did not include that in our brief. That's a ground that is not as sweeping or as generalized as the ones we did raise each of which would dispose of the case in its entirety. Well as I read the blue brief they only raised the issue of statute of limitations on appeal basically. But the but jurisdictional issues may be raised at any time and it is the courts obligation to determine its jurisdiction. We raised Article 3 standing as an initial point simply because of potential jurisprudential appropriateness of that order. It is not required. Each of these each of the arguments that we make in our in our red brief would dispose of the case in its entirety. Why is there a trust responsibility created by the 1866 treaties? Trust law does not apply unless there is an alleged violation of a specific rights creating or duty imposing provision of federal law and a claim for damages. The only applicability of trust law in that instance in that situation the Navajo decision is to determine whether or not the provision violated may reasonably be inferred as creating a right to a damages remedy. In other words until... There's a damages based upon the violation of the trust that you need to create the trust first? In the opposite... In fact the 1866 treaties created a trust responsibility on behalf of the United States to the freedmen. Why isn't that trust still in place? In the first place there's no provision of any of the 1866 treaties that creates any trust. No specific indication of a trust. They did say that we now have a trust responsibility to the freedmen. That never happens, right? There was a position that was taken by the United States to have the freedmen become members of the tribe. Correct, that is what the tribes committed to doing and in the case of the Choctaw and Chickasaw there were additionally potential individual rights created. Those rights are the ones that were adjudicated by the Supreme Court in 1904. Only the Choctaws? The Choctaw and Chickasaw occupied jointly the land that was at issue in their treaty. Now with respect to those particular tribes there was another condition that they needed to make those members the freedmen members of the tribe which they never did. The Chickasaw never did, correct. That's right, your honor. So you have to really treat those two separate from the other three members of the civilized tribes, right? The Seminoles? The other three tribes were not, the treaties with the other three tribes merely obligated those tribes to treat their freedmen as members of the tribes. And if they did not, then what? There was no provision for if they did not in any of these treaties. I mean what good is a treaty if they did not? Is that just a papal trail that's left behind by the United States? The treaties were agreements between the United States and the tribes. They were not agreements with or on behalf of the freedmen. The freedmen were the beneficiaries. The freedmen were to have benefited from actions by the tribes that would have allowed those tribes to continue their occupancy of their tribal lands. Those tribal lands were allotted to individuals at the turn of the century. Any claim having to do with that process or the ownership of those lands therefore accrued and the statute of limitations has run on it as of approximately the turn of the 20th century. Let's step back to the 1866 provisions. If in fact the United States provided for those individual freedmen to become members of the tribe, and they did become members of the tribe, is there a responsibility on the United States at that point in time as a trustee to make sure that those actions were taken by the tribes? Your Honor, that is a question that's not addressed in this litigation. Whether there are obligations of the United States to persons who are obliged by parties to treaties to be treated in a certain way is an interesting question. The question here, though… It's not an interesting question. I think it's a legal issue as to whether or not the United States owes the freedmen a trust responsibility at that point in time. Even if the United States owed some trust responsibility, this case does not waive the United States' sovereign immunity under Navajo because there is no specific rights-creating or duty-imposing language in any one of those treaties between the parties here, between the freedmen and the United States, and in the absence of specific rights-creating or duty-imposing prescriptions in a treaty statute or regulation, no relevance is brought to trust law in an action against the United States because the Tucker Act does not waive the United States' sovereign immunity. Well, that was still a question of whether Navajo was properly decided, but that's beside the point. That's behind us now. That's water under the bridge or over the bridge, whatever. That's right, and trust law then only comes into play after the showing of a violation of a specific rights-creating or duty-imposing prescription in federal law. So what degree of specificity does a treaty have to have in order to create a trust? I can't answer that question. Language might be construed to contain sufficiently specific prescriptions in a given treaty, but it needs to be specific and it needs to either create a right or impose a duty, and that duty needs to run to the plaintiff in order for that provision to waive the United States' immunity to a Tucker Act claim based on that provision. In this instance, it's clear that those treaties' treatment of the lands was fully played out by the turn of the century. So even if there had been some obligation... Under the Allotment Act... Under the Allotment Agreements. Specific agreements then or statutory agreements provided for a distribution of land under the allotment established by the tribes, and if the freedmen are not receiving the allotments at that point, was there a violation of the treaty? No, Your Honor. Congress acted at that time to create the Dawes Commission, which established the entitlements of tribal members to receive allotments of the lands of the five civilized tribes. Congress can abrogate treaties, even if there had been something here that clearly establishes... With a penalty. I mean, you can't just abrogate a treaty without a penalty. If there is a duty that's established under that treaty... There is no duty that can be read out of these treaties in any specific terms, and any duty that may have been created by the treaty under any theory was clearly changed, if not abrogated, with respect to the allotment of these lands by the Dawes Commission Act and the allotment of the lands of the five civilized tribes by congressional action. So the question here, which is whether the court correctly dismissed for lack of subject matter jurisdiction, is clearly yes, the court correctly dismissed for lack of subject matter jurisdiction. It's a shame that we couldn't have had all the litigation that's arisen because of whether a particular treaty creates a trust relationship or not. It's too bad that Congress back in those days couldn't have just had two boxes in the statute or the treaty and said, Tucker Act, no Tucker Act. Just take it like that. We almost get to that. Unfortunately, the Indian Tucker Act didn't really come into existence until 1946. I stand corrected. We won't be doing treaties anymore. Then they couldn't have done it. They couldn't have. Fair enough. So they did their best, Your Honor. If the panel has any further questions, I would be happy to address those. Okay. Thank you. Mr. Squire, as I said, you have your full three minutes for rebuttal. Thank you very much, Your Honor. With respect to a couple of points raised by opposing counsel, the notion that the 1866 treaties created no duty is not the correct analysis here. There were affirmative duties created under the 1866 treaties. It's evidenced by the fact there was subsequent implementing legislation under the Allotment Acts to see that this land was properly allocated among the freedmen. To the extent that the Tucker Act created a claim against the United States in the event of a breach of contract, basically, that constituted a waiver of sovereign immunity. And the trust relationship that exists between the United States and the freedmen was brought fully into focus. You asked questions about the Chickasaw Treaty. In that particular instance, if the freedmen were adopted into the tribes, the tribes would receive, among other things, a $300,000 payment from the federal government. In the event that the tribes elected not to adopt the freedmen, the United States would not apportion the $300,000. That was an example of action being required on the tribe's behalf in order to obtain entitlement to a benefit being extended by the United States. I point that out, Judge, only to say that there was a specific trust relationship created under these treaties. The Choctaw and Chickasaw example is just an example. But there was a specific sum of money set aside that the tribe could entitle itself to if it performed certain acts, which it failed to do here. The notion that these treaties created no duty is simply an extension of the unfortunate history that has been associated with these Indian treaties, is that they have actually no viability in reality is what the United States is arguing. They're saying that Congress passed all these laws in 1866. They went into these understandings with the tribes. But the argument here is that there were no rights or other entitlements created by these documents. And I would request that the court reject that. The primary argument that we have here, Your Honor, is that we argue that the statute of limitations was not a bar to these claims under two grounds, the continuing claims doctrine and the repudiation rule. The continuing claims argument was dealt with extensively by the trial court. The repudiation rule was not dealt with at all. And it's our position, Judge, that at a minimum, this case should be remanded to the court of claims for the purpose of addressing our repudiation rule argument that was totally ignored in the court's opinion. Thank you very much. Thank you, Mr. Squire. Again, Ms. Pearson, thank you. The case is submitted. The second case in which we will hear oral arguments is the case in which we will hear oral arguments.